1  Christopher S. Morris, Esq., SBN 163188
   Danielle R. Pena, Esq., SBN 286002
2  MORRIS LAW FIRM, APC
   401 West A Street, Suite 1820
3  San Diego, CA 92101
   Telephone: (619) 826-8060
4  Facsimile: (619) 826-8065

5  Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(EL CENTRO)

| | |
|---|---|
| LAVERNE SAMPSON, individually and as duly appointed Administrator and Personal Representative of the Estate of CHARLES SAMPSON, SR.; JA'NEY SAMPSON, an individual; and CHARLES SAMPSON, JR., an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF EL CENTRO; JAMES THOMPSON; EL CENTRO POLICE DEPARTMENT, by and through its Police Chief, JAMES McGINLEY; and DOES 1 – 50, inclusive,<br><br>Defendants. | Case No. 14-cv-1807-L (DHB)<br><br>**PLAINTIFFS' EX PARTE APPLICATION TO SUBSTITUTE TRUE NAMES FOR THE UNNAMED "DOE" DEFENDANTS**<br><br>Date: No Hearing Date<br><br>Honorable David H. Bartick |

1

I.
INTRODUCTION

Plaintiffs bring this unopposed motion to substitute unnamed DOE defendants with the true names of the actual defendants in this matter. This case involves the untimely death of Charles Sampson who died in the custody of the El Centro Police Department. Depositions and document production were initiated in a timely fashion. While discovery is on-going, the parties' initial exchange included officer reports, body camera videos, dash camera videos and audio recordings of radio and emergency calls regarding the incident leading to Mr. Sampson's death. Upon review of the videos and audio recordings, the true identities of the officers responsible for the care and custody of Mr. Sampson have surfaced.

Specifically, Officer Gustafson was an instrumental participant in the interrogation of Mr. Sampson during the search of his residence. Initially, officer Gustafson and Thompson (a named defendant) searched Mr. Sampson's residence but they came up empty. They then called for a canine. That too came up empty. When the BEST team – with 12 agents – searched the house, it was clear that there were no drugs in the house. However, that wasn't enough for Gustafson. He then initiated his interrogation of Mr. Sampson in hopes he would lead them to his "drug stash." When Gustafson came outside to the patrol unit, the strong-confident man that was pulled over for a traffic stop 45 minutes prior was no longer. Videos show when Gustafson opened the car door to talk to Mr. Sampson, Mr. Sampson was in a pool of sweat, shaking uncontrollably, and having difficulty talking. Whatever Mr. Sampson did manage to say was incoherent. Gustafson brushed off these signs of serious medical distress and dismissed them by saying Mr. Sampson "was just nervous." Like Thompson, Gustafson systematically ignored the families' repeated and desperate pleas for help.

Further, frustrated with their fruitless interrogation, officers decided to bring

Mr. Sampson inside the house to have him show them where his drugs were. When trying to get Mr. Sampson out of the patrol unit it was painfully obvious that he couldn't walk. While Mr. Sampson was being dragged inside his house by two officers while his legs were straight behind him with his toes curled beneath him, his family, seeing Mr. Sampson for the first time since he was initially pulled over, was pleading for medical assistance. When the family realized the officers were not going to call for medical assistance, because in their opinion, Mr. Sampson "was just faking it," the family took matters into their own hands. At 7:53 p.m. Mr. Sampson's niece, Sharise, called 911, but she states there was no one the other side of the line. Then, Mr. Sampson's sister-in-law, Denise, a former Sheriff's dispatcher, calls the El Centro dispatcher line directly. This call lasted 38 seconds. Again, no one was on the other line.

Unbeknownst to the family, at 7:54 p.m., immediately after or during Sharise's call to 911 but before Denise called the dispatch line, evidence shows Officer Richard Lopez made a call from his private cell phone to the El Centro dispatcher. Officer Lopez told the dispatcher that Mr. Sampson "was putting on a bit of a show" and to "disregard any medical calls" from the Sampson residence. Seemingly, no matter what the family did that night, pursuant to the officers' intentions, Mr. Sampson was never going to get the help he needed. Officer Gustafson and Lopez' actions were despicable, egregious, outrageous, intentional and deliberately indifferent to Mr. Sampson's serious medical needs.

The scheduling order in this matter permits the joining of parties and amendments to the pleadings on or before April 23, 2015. In addition, as outlined above, there has been no undue or unreasonable delay in substituting in the true names of the officers responsible for Mr. Sampson's care for the unnamed DOE defendants. Further, plaintiff's counsel has been in contact with defendants regarding these substitutions. Defendants have represented to plaintiffs that they do

not oppose plaintiffs' request to substitute true names of defendants. Thus, plaintiffs' request should be granted.

## II.

## ARGUMENT

First, this unopposed motion is timely pursuant to the scheduling order in this matter. Further, in California state court, the substitution of DOE defendants is controlled by California Code of Civil Procedure § 474 which provides that "when the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, … and such defendant may be designated in any pleading by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly…." California law permits such substitution up to three years after the commencement of the suit. *Cabrales v. County of Los Angeles*, 864 F. 2d 1454, 1463 (9th Cir. 1988). The Ninth Circuit has specifically approved the procedure outlined in CCP 474 in § 1983 litigation. *Id* at 1462-1462. More recently, the Ninth Circuit has applied CCP § 474 to a *Bivens* civil action. *Kreines v. United States*, 959 F. 2d 834, 837 (9th Cir. 1992). In states that do not have a law specifically addressing the substitution of DOE defendants, federal courts have applied a "no unreasonable delay" standard. *See e.g., Elysian v. First Equity Corp.*, 713 F. Supp. 737, 751, fn. 19 (D. NJ. 1989).

As outlined by Ninth Circuit in *Kreines*, "section 474 allows a plaintiff in good faith to delay suing particular persons as named defendants until he has knowledge of sufficient facts to cause a reasonable person to believe that liability is probable." *Kreines*, 959 F. 2d at 837; citing *Dieckman v. Superior Court*, 175 Cal. App. 3d 345 (1989). "Section 474 is to be construed liberally to accomplish its purpose….Further, substitution avoids the necessity of indiscriminately naming all known persons who may potentially be connected to a suit and encourages reasoned substitution for fictitious defendants after resort to discovery" *Kreines*, 959 F. 2d at

4

837-838; *citing Munoz v. Purdy*, 91 Cal. App. 3d 942 (1979).

In this matter, the suit was initially filed on July 31, 2014. Therefore, plaintiffs are well within the three year statute set forth in CCP 474. Further, plaintiffs judiciously waited until the documents identifying the persons responsible for the in-custody care of Mr. Sampson were produced so that plaintiffs could make an informed decision before requesting permission to substitute the true names for the DOE defendants. As outlined, the body camera videos depicted and identified Officer Gustafson's deliberately ignoring Mr. Sampson's signs of medical distress and his families' desperate pleas for help. He witnessed Mr. Sampson's initial demeanor when he assisted Thompson (a named defendant) in the traffic stop. In less than an hour, Mr. Sampson went from a strong normal acting man to a weak, shaking, sweating invalid.

Further, Officer Lopez admitted in his report, which was confirmed by the dispatch recordings, that he called dispatch and advised them to disregard medical calls from the Sampson address because Mr. Sampson "was putting on a bit of a show." Not only did Lopez ignore Mr. Sampson's obvious signs of medical distress and the families' repeated requests for medical assistance, he went out of his way to ensure it would never come.

The officers' actions as described above were despicable, egregious, outrageous, intentional and deliberately indifferent to Mr. Sampson's serious medical needs. As such, plaintiffs' request to substitute true names for unnamed DOE defendants should be granted.

III.

CONCLUSION

Plaintiffs' request is timely pursuant to the scheduling order and relevant case law. Upon review of the discovery exchanged thus far, plaintiffs can firmly established both the identities of these defendants as well as provide a factual basis upon which it could be fairly said that liability is "probable." As such, plaintiffs

1  respectfully request that their application be granted.

2

3  Dated:  April 20, 2015                    **MORRIS LAW FIRM, APC**

4                                              */s/Danielle R. Pena*

5                                            Danielle R. Pena, Esq.
                                             dpena@morrislawfirmapc.com
6                                            Attorneys for plaintiffs

6